IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Christopher Jason Youngblood | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | CIVIL ACTION NO. |
| vs. | ) | 2:14-cv-299-MHT |
| | ) | (WO) |
| City of Troy, Alabama | ) | |
| | ) | |
| *Defendant.* | ) | |

<u>ORDER ON PRETRIAL HEARING</u>

A pretrial hearing was held in this case on July 17, 2015, wherein the following proceedings were held and actions taken:

1.   <u>PARTIES AND TRIAL COUNSEL</u>:

      Plaintiff:     Christopher Youngblood.

      Counsel for Plaintiff:     Anthony Brian Bush

      Defendant:     City of Troy, Alabama.

      Counsel for Defendant:     Randall Morgan
                                      Elizabeth Brannen Carter

    <u>COUNSEL APPEARING AT PRETRIAL HEARING</u>:

      For Plaintiff:     Anthony Brian Bush

      For Defendant:     Randall Morgan
                                    Elizabeth Brannen Carter

2.   <u>JURISDICTION AND VENUE</u>

Plaintiff asserts original jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff asserts

supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.  Plaintiff asserts venue is

proper pursuant to 28 U.S.C. § 1391.  Defendant denies all wrongdoing but agrees jurisdiction and venue would be proper in this Court.

3.    **PLEADINGS**:  The following pleadings and amendments were allowed:

    (a)    Plaintiff filed a complaint on April 22, 2014. (Doc. 1); and

    (b)    Defendant filed an answer on May 27, 2014.  (Doc. 6).

No amendments have been filed.

4.    **CONTENTIONS OF THE PARTIES**:

    (a)    The Plaintiff contends as follows:

Plaintiff, Christopher Jason Youngblood ("Mr. Youngblood"), a Caucasian, contends that, in response to a Charge of Discrimination ("Charge") filed with the Equal Employment Opportunity Commission  ("EEOC") against Defendant by Edward Olanda Hardy ("Hardy"), an African-American and former-employee police officer, Defendant made several promotions wherein an African-American officer was promoted to the position of Lieutenant over Mr. Youngblood (who returned the highest score on the promotional exam for that period), because of the officer's race in violation of Title VII of the Civil Rights Act of 1964 and of Section 1981. Within his Charge, Hardy alleged that Defendant failed to promote Hardy because of his race, African-American.  Accordingly, after learning of Hardy's complaint, Defendant promoted at least two (2) African-American police officers to the position of Lieutenant over Mr. Youngblood.  Mr. Youngblood contends that Defendant failed to promote Mr. Youngblood because of his race, Caucasian.

Mr. Youngblood began his career in law enforcement in April, 1996 as an officer with Troy State University.  In January, 1997, he accepted employment with the Ozark Police Department as an officer.  In 1998, he accepted employment with the Dothan Police Department

where he remained until 2001. In 2001, Mr. Youngblood accepted employment with Pleasant Hill Police Department in California, where he remained until his return to employment with Defendant in 2002.  He voluntarily resigned from his employment with Defendant in 2004 and moved to Montgomery where he engaged in other employment, i.e. with the Alabama National Guard Counterdrug program in conjunction with the Central Alabama Drug Task Force.  In 2007, Mr. Youngblood returned to employment as an officer with Defendant and remains in such employment.  Accordingly, at the time of the promotions in 2012, Mr. Youngblood had approximately sixteen (16) years of combined experience in law enforcement.  He has not been reprimanded during his employment with Defendant.  Mr. Youngblood has a degree in Criminal Justice from Columbia Southern University in Orange Beach, Alabama.  With the exception of a brief period of time from October 8, 2012 through May 31, 2014 when he was serving active duty with the military, Mr. Youngblood has worked full-time with Defendant.  He has served approximately 21 years in the United States Army National Guard.

From March 19 through March 27, 2012, Defendant administered promotional examinations to officers desiring a promotion to the positions of Lieutenant and Sergeant.  The promotional examination consists of five parts: 1) written examination (40%); 2) oral interview (40%); 3) job experience (10%); 4) formal education (5%); and 5) job evaluation (5%).  Defendant's policy states that Defendant "will mandate the requirements for promotional eligibility and will assist in developing measurement instruments used to determine an employee's skills, knowledge, and abilities."  The policy describes the eligibility requirements, written examination, oral interview, job experience, formal education, and job evaluation components of the examination.  Accordingly, the promotional policy developed by Defendant accounts for a promotional candidates skills, knowledge and ability.

In early 2012, Mr. Youngblood took the examination to be promoted to the position of Lieutenant.  On April 11, 2012, the examination results were released wherein Mr. Youngblood returned the highest score followed by Lee Barnes (Caucasian), Jimmy Mueller (Caucasian), Matt Raiti (Caucasian), Greg Wright (African-American), John Jerkins (African-American), and Sanford Wingard (African-American).  The top three (3) candidates for the promotion from Sergeant to Lieutenant – Mr. Youngblood, Barnes and Mueller - were all Caucasian.  Accordingly, pursuant to the policy, Chief Ennis had to choose one of these three individuals to promote to the position of Lieutenant, before any further promotions could be made.

Defendant promoted Barnes to the position of Lieutenant.  At the time of Barnes' promotion on September 6, 2012, the top three candidates from which Chief Ennis was required to choose consisted of Mr. Youngblood, Barnes and Mueller, all Caucasian.  Defendant, through Chief Ennis, had no choice but to promote either Plaintiff, Barnes or Mueller, as these were the top three (3) candidates during the first round of promotions.  Barnes' promotion was a means to an end, or was simply necessary to maneuver Wright and Jerkins, both African-Americans, into the top three (3) candidates for promotion.

A further promotion required that the fourth candidate be joined with the two candidates that were not selected during the first promotion.  Mr. Youngblood was joined with Mueller and Raiti, and submitted to Chief Ennis for promotion to Lieutenant.  Because Raiti was not eligible for promotion until December 1, 2012, Mr. Younblood was joined with Mueller and Wright and submitted to Chief Ennis for promotion.  Chief Ennis promoted Wright, an African-American, to the position of Lieutenant. Wright scored either an 81.93 or an 86.06, dependent upon which Defendant-produced document is considered, and lower than Mr. Youngblood.  After Wright's promotion, the top three candidates consisted of Mr. Youngblood, Mueller and Jerkins, an

African-American.  Jerkins returned the sixth highest score on the examination for a promotion

to Lieutenant.  Jerkins scored an 84.72 on the examination.  Jerkins was promoted to the position

of Lieutenant on October 15, 2012, again with such promotion being over Mr.

YoungbloodDefendant promoted Greg Wright and John Jerkins, both African-Americans, over

Mr. Youngblood.  Mr. Youngblood contends that these promotions were undertaken by

Defendant in reaction to the Charge of race discrimination filed against Defendant by Hardy, and

that such actions are in violation of Title VII of the Civil Rights Act of 1964 and of Section

1981.

On September 6, 2012, Defendant promoted Wright, over Mr. Youngblood, to the

position of Lieutenant.  Wright accepted employment with Defendant in or around 1990.  At the

time of such employment, Wright had one (1) year prior experience in law enforcement.  At the

time of the promotions in 2012, Wright had approximately twenty-three (23) years of experience

in law enforcement.  In 1999, Wright was reprimanded for failing to follow Standard Police

Procedures during the investigation of a complaint.

IIn October of 2012, Defendant promoted Jerkins, over Mr. Youngblood, to the position of

Lieutenant.  Jerkins accepted employment with Defendant in October, 1995.  At the time of such

employment, Jerkins had no prior experience as a law enforcement officer.  At the time of the

promotions in 2012, Jerkins had approximately seventeen (17) years of experience in law

enforcement.

As noted above, Mr. Youngblood contends that Wright and Jerkins were promoted over

Plaintiff, because of their race, African-American, and because of the race-discrimination Charge

filed by Hardy.  Essentially, Mr. Youngblood contends that, upon learning that Hardy had filed a

Charge with the EEOC alleging that Defendant had failed / refused to promote Hardy because he

is an African-American, Defendant engaged in efforts to promote African-Americans, in an effort to better position itself in regards to the Hardy Charge.

Further, Mr. Youngblood contends that, because of his vast experience in law enforcement with Defendant, other agencies, and the United States Military, he is as experienced and qualified for the position of Lieutenant as both Wright and Jerkins.   Mr. Youngblood has never been reprimanded during his tenure of employment with Defendant.  Wright has been reprimanded.  Mr. Youngblood has a degree in Criminal Justice. Neither Wright nor Jerkins have a degree.

Further, Mr. Youngblood contends that, since he returned the highest score on the examination which factored in experience, education, performance, etc., Defendant's argument that it selected Wright and Jerkins based upon consideration of these factors, which would necessarily mean consideration in addition to that already factored into the examination, is unworthy of belief.  In 2011, Bryan Weed, a Caucasian, was promoted to the position of Lieutenant.  At the time of Weed's promotion, he had approximately eight (8) years of experience in law enforcement, with six (6) of those years coming from employment with Defendant.  Weed was promoted over both Plaintiff and Barnes, each of whom had more experience in law enforcement than Weed.  Accordingly, Defendant's position that it takes experience and tenure into consideration during promotions is implausible and unbelievable.

Plaintiff seeks damages including, but not limited to, actual, compensatory and punitive damages against Defendant for its violations of Title VII of the Civil Rights Act of 1964 and of 42 U.S.C. Section 1981.

(b)      The Defendant contends as follows:

6

Plaintiff is a Caucasian male who claims he was not promoted to position of lieutenant because of his race. Prior to working with Troy, Plaintiff only held the position of patrol officer, staying a short period of time at multiple police departments. Plaintiff worked for Defendant, left for another job then returned. He is presently employed with Defendant as a sergeant.

Defendant, the City of Troy, is a municipality organized under the laws of the State of Alabama. Chief of Police Jimmy Ennis was the final decision-maker regarding the promotions in question. Chief Ennis began work with the City of Troy Police Department on July 6, 1985 as a police officer. He was promoted to sergeant on second shift in 1994 and assigned in 1997 to the Detective Division. In 2001, he was promoted to lieutenant and worked third shift. Chief Ennis was then promoted to Captain of the Detective Division where he worked until September 30, 2011 when he was appointed Chief of Police, the position in which he currently serves.

There was a promotional process for lieutenant in 2012 which produced a promotion list that was good for one year. Both promotions being challenged by Plaintiff occurred in 2012. To be qualified for promotion to lieutenant an applicant has to have held the rank of Sergeant for one year. The candidate must be in good standing with satisfactory evaluations within the last twenty-four months. The candidate must not have had any disciplinary action resulting in suspension within the preceding twelve months. There is a written exam. A candidate must score a 70 or higher to be considered for promotion. The procedure also involves an Oral Interview. Job experience, education and past evaluations are also taken into consideration. A promotion list is compiled and ranked according to scores. The promotion list is valid for one year. When a vacancy needs to be filled, the Chief of Police request and receives a list of candidates with the top three scores. Once a promotion from that list of three is made, the person fourth on the promotion rankings is added to the list of three for consideration. The top three of

7

the remaining qualified candidates is always provided to the Chief of Police for consideration. The Chief of Police can chose anyone he feels is the most qualified and best suited for the particular job from the list of three.

Plaintiff does not allege that the promotion process was not followed or that Chief Ennis did anything wrong with following the policy/procedure of the promotion process.  Rather Plaintiff questions the wisdom of the decision, believes he was more qualified than the successful candidates and believes Defendant wanted to promote African Americans because of an EEOC charge that was filed by another officer.  Plaintiff cannot present evidence to support any part of these contentions.  Plaintiff was far less qualified than the successful candidates and any other EEOC charge was wholly unrelated to the promotions in question here.  No consideration of race was made when the successful candidates were promoted.   Defendant asserts more specifically as follows:

The first promotion from that 2012 list was a Caucasian male, Lee Barnes.   When the second promotion was to be made, the fourth person on the ranking list, Matthew Raiti, was not eligible for promotion because he had not served in the position as sergeant for at least one year. So, the fifth ranked individual on the list was moved to the list of the top three for Chief Ennis to make his selection.  Chief Ennis selected Greg Wright (Wright), a African American male, for promotion because Wright was the best qualified candidate for the job.  For the third 2012 promotion, the sixth ranked individual was moved up as one of the top three names provided to Chief Ennis for promotion.  Chief Ennis selected John Jerkins (Jerkins), a African American male, for promotion because Jerkins was the best qualified for the job.

Plaintiff was on the list each time because he had the highest score from the test/assessment but he was not ultimately selected by Chief Ennis because he was not the most

qualified candidate and/or the best candidate for the job.      The City denies and demands strict proof thereof of any claim that race was a consideration in the decision-making process.  Wright and Jerkins had long-standing, decorated careers with Defendant and their qualifications for the promotions far exceeded that of Plaintiff.

It is undisputed there was no policy violation or procedure breach when making the promotion decisions in question.

Plaintiff is clear that Chief Ennis did not say, write or otherwise represent to anyone that he promoted Wright or Jerkins because they are African American.

Plaintiff points to the EEOC allegations of a fellow officer, Olando Hardy, as alleged motivation for Chief Ennis' promotion decisions.  Defendant denies the allegations, asserts the allegation is based on naked speculation, false testimony and is otherwise not relevant here. Hardy's EEOC charge was completely unrelated to the promotions in question.  Hardy's affidavit regarding the timing of notice to the City is false and not worthy of credence.  Chief Ennis had no knowledge of the Hardy Charge when he promoted Wright and did not consider the unfounded Hardy EEOC charge when he promoted Jerkins.

Defendant denies Plaintiff is more qualified than the successful applicants and demands strict proof thereof.  Plaintiff is unfamiliar with the qualifications of Wright and Jerkins. Plaintiff agrees both are successful officers.  Plaintiff agrees both have a more diverse background in law enforcement.  Plaintiff agrees both have more expansive experience as supervisors.  Plaintiff agrees that it was reasonable for Chief Ennis to believe that Wright and Jerkins were more qualified for the promotions.  Plaintiff's own sworn testimony renders it impossible for him to maintain a race claim against the City for the promotions in question.

The promotion policy allows for discretion by the Chief of Police because it is important to consider factors such as the particular division for promotion, a person's past work performance in other areas in the police department, type and years of experience, total circumstances based on the personality and fit for a specific position, etc.  Plaintiff agrees these factors were considered in Chief Ennis's decision-making process.

Chief Ennis did not consider experience from other police departments. Plaintiff's alleged past work experience outside of the City of Troy is irrelevant to this case.

The record is void of any evidence that Chief Ennis is being dishonest about his legitimate reasons for the promotional decisions.  The record is void of any evidence whatsoever that Chief Ennis had racial motivation in making the promotion decision.

Greg Wright is a veteran who worked for the police department four times longer than Youngblood, was a successful narcotics officer and supervisor in Patrol Division, as well as an investigator in the Detective Division.  Wright also serves on the ERT Team and is an Active Shooter Instructor.  Wright was the most qualified person for the job because of his successful tenure with the department over the years.   Plaintiff did not have the diversified experience or years of experience as Wright.  Wright was the best for the job because of his success in Narcotics, supervising patrol and his work as an investigator in the Detective Division.  His number of years of valuable diversified experience was also a factor considered.

Jerkins also had much more experience than Plaintiff (hire date 10/2/95), had a diversified background with the Department, working in both Public Housing and Patrol Divisions.  He often handled dual duty between divisions and was successful as a third shift supervisor.   The promotion in question was in Public Housing making Jerkins long-term relevant experience critical in the decision-making process.  Plaintiff's work experience was

much more limited and short-lived, comparatively. Plaintiff did not have directly relevant experience, as did Jerkins.

Plaintiff did not possess the qualities and background of Wright or Jerkins. Both were highly more qualified than Plaintiff for promotion to lieutenant at the time.

Plaintiff fails to establish the necessary evidence to maintain a race claim pursuant to Title VII or §1983.

Plaintiff fails to present circumstantial evidence of intentional race discrimination.

Plaintiff cannot challenge the legitimate nondiscriminatory reasons proffered by the City for the promotion decisions in question.

Plaintiff attempts to compare his qualifications to the successful candidates but cannot establish that the alleged disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidates selected over Plaintiff for the promotions in question. The qualifications of the candidate must be adjudged based upon Defendant's selected job criteria. Plaintiff may not establish that Defendant's proffered reasons are pretextual merely by questioning the wisdom of the reasons. Plaintiff's case here is solely based on questioning the wisdom of the decision or wisdom of the promotional process therefore Plaintiff's claims fail. Plaintiff fails to present evidence of pretext.

Defendant asserts Plaintiff failed to mitigate his damages; Plaintiff failed to act in good faith; any alleged damages suffered by Plaintiff were not caused in any way by Defendant; any claim by Plaintiff for damages is capped pursuant to 42 U.S.A. §1981a(b)(3); Plaintiff cannot recover punitive damages.

Plaintiff cannot establish that he was treated less favorably than a similarly situated employee.

Defendant's actions as it relates to Plaintiff were consistent with policies and rules applied to similarly situated employees.

Defendant's interest in the efficient and fair operation of the City outweighs the personal interest of Plaintiff and any other individual employee.

Defendant acted at all times in the best interest of the City of Troy and promoted the most qualified individuals for the jobs in question.

Even if Plaintiff suffered an adverse employment action and even if he presents evidence that decision was somehow related to race, he cannot maintain this claim because he would have received the same adverse employment action absent the illegal motive.

Defendant pleads all affirmative defenses related to a Title VII and §1981 claim.


**5.    STIPULATIONS BY AND BETWEEN THE PARTIES:**

1.    Plaintiff is presently employed with the City as a Sergeant with the Police Department.

2.    The two promotions in question occurred in 2012 and were for lieutenant positions.

**\*\*\***

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last two days, are set for August 17, 2015,

12

at 10:00 a.m. at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by August 10, 2015;

(5) All deadlines not otherwise affected by this order will remain as set forth in the uniform scheduling order (doc. no. 15) entered by the court on July 23, 2014; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 23rd day of July, 2015.

    /s/ Myron H. Thompson_
    UNITED STATES DISTRICT JUDGE