IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JASON YOUNGBLOOD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:14cv299-MHT (WO) |
| CITY OF TROY, ALABAMA, | ) ) | |
| Defendant. | ) | |

## OPINION

Plaintiff Christopher Jason Youngblood, a police officer employed by the defendant City of Troy, Alabama, brought this lawsuit against his employer claiming that he was denied promotions on account of his race, in violation of  the Civil Rights Act of 1866, as amended (42 U.S.C. § 1981), and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a, 2000e to 2000e-17). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question) and § 1343(a)(4)  (civil  rights),  and  42  U.S.C. § 2000e-5(f)(3) (Title VII).  This cause is now before

the court on the city's motion for summary judgment in its favor.   For the reasons that follow, the motion will be granted.


## I. SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted.   Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994).

## II. FACTUAL BACKGROUND

Youngblood, who is Caucasian, began his career in police work in 1996, and, since that year, has worked in a number of different roles: as a police officer in four different police departments; as a member of the National Guard; as an investigator in a non-uniformed law-enforcement role; and as a train engineer for CSX. He first joined the Troy Police Department in 2002, left in 2004, returned in 2007, and has remained an officer there since then.  He was promoted to the rank of sergeant in 2010 and has been employed in the department's Patrol Division throughout his tenure.  At the time he applied for a promotion in 2012, he had about 14 years of combined experience in law enforcement, including seven years with the Troy Police Department.

In 2012, the Troy Police Department had available promotions for three lieutenant positions in various divisions.  Under the department's promotion-procedure

3

policy, all applicants must submit to an evaluation, which has several components, including a score on a written exam and an interview before an oral-promotion board. They must also meet other eligibility criteria.[1] After the scores on the evaluation have been compiled, the department creates a ranked list of applicants by scores.[2] The Chief of Police is sent a list of the top three eligible applicants. Under the policy, he has discretion to decide which of those three applicants should be awarded the promotion.

---

1. The components are weighted in the following way: written exam (40 %), oral interview (40 %), job experience (10 %), formal education (5 %), and job evaluation (5 %).

2. To be eligible for promotion, applicants also must have held the rank of sergeant for at least a year, been in good standing with satisfactory evaluations over the prior 24 months, and not have been disciplined with a suspension during the prior 12 months. If any of the applicants is ineligible under these additional criteria, they are crossed off the list and the next highest ranked person on the list moves up.

In 2012, Youngblood had the highest score on the evaluation for promotion to lieutenant.[3]   He also met the other qualification criteria for a promotion. However, he was not promoted.  Although Chief of Police Jimmy Ennis repeatedly considered him for a promotion, on each occasion he selected another qualified individual.   Ennis first promoted a white man, Lee Barnes.   Ennis's second and third selections were both black men: Greg Wright and John Jerkins, respectively. In addition, in a prior year, Ennis had selected Bryan Weed, a white man, for lieutenant over Youngblood.

Around the same time that Police Chief Ennis was considering whom to promote into the second 2012 opening for a lieutenant, a lieutenant in the department who is black filed an Equal Employment Opportunity Commission (EEOC) charge claiming that he had been denied promotions due to race.[4]   Youngblood

_____

3. The range of applicant scores were all within less than 10 points on a 100-point scale.

4. There has been considerable debate between the parties as to when, exactly, Ennis knew of this EEOC (continued ...)

argues that Ennis promoted the two black individuals to lieutenant in response to the EEOC complaint, and in an effort to disprove the charge of discrimination.

Believing that he had been discriminated against on the basis of race, Youngblood filed an EEOC charge alleging racial discrimination in failing to promote him. He then filed this suit.

### III. ANALYSIS

Youngblood brings his race-discrimination claim under Title VII[5] and 42 U.S.C. § 1981.[6]   As these

---

charge and whether he found out before or after he promoted Wright. For the purposes of summary judgment, the court assumes that Ennis knew of the EEOC charge before he promoted Wright.

5. 42 U.S.C. § 2000e-2(a)(1) provides, in part, as follows: "It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...."

6. Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both the public and private sectors. See Johnson v. Railway Express Agency, (continued ...)

statutes have the same standards of proof and use the same analytical framework, <u>Bryant v. Jones</u>, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009), the court will "explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998).

When, as Youngblood does here, a plaintiff presents circumstantial evidence of intent to prove a Title VII claim, the court uses the analytical framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[7] Under this framework, the plaintiff must first establish a

_____

<u>Inc.</u>, 421 U.S. 454, 459–60 (1975). Section 1981 permits claims for intentional racial discrimination in "the making, performance, modification, and termination of [employment] contracts," as well as "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

7. In his complaint, Youngblood sought to bring a discrimination claim under a "disparate impact" theory. However, as he has presented no statistical evidence or otherwise argued that he has shown a disparate-impact claim, the court concludes that he has abandoned that theory.

prima-facie case of discrimination.  _Id_. at 802.  Once the plaintiff has presented a prima-facie case of discriminatory failure to promote, a presumption of discrimination arises.  _Id_. at 802.  "The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption.  If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual."  _Standard_, 161 F.3d at 1331 (citing _McDonnell Douglas_, 411 U.S. at 802-04).  And the plaintiff must present evidence sufficient for a reasonable factfinder to discredit all of the proffered reasons to succeed.  _See_ _Chapman v. AI Transport_, 229 F.3d 1012, 1037 (11th Cir.2000) (en banc) ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual."); _Crawford v. City of Fairburn_, 482 F.3d 1305, 1308 (11th Cir. 2007).

8

("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment."); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) (where plaintiff failed to rebut one of the three reasons, defendant was entitled to judgment as a matter of law on charge of impermissible discrimination).

Youngblood may establish a prima-facie case of discriminatory failure to promote by showing that "(1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position; and (4) someone outside of the protected group was given the position." Standard, 161 F.3d at 1333. Youngblood has met this burden. It is undisputed that Youngblood is a member of a protected group, see McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278-80 (1976); he was not promoted to lieutenant; he was qualified for the position; and, as to the promotions of Wright and Jerkins, someone outside Youngblood's protected group

was given the promotion.   Accordingly, the burden shifts to the city to produce a legitimate, nondiscriminatory reason for its actions.

The city clearly has met this burden.   The city put forth the explanations of Chief Ennis, who explained his general approach and his specific reasons for promoting Wright and Jerkins over Youngblood.   Ennis explained that, when considering applicants for promotions, he considers many factors, including "the division wherein the candidate will be assigned, evaluations, past work performance in other areas of the police department, and years of service: a totality of the circumstances based on the personality and fit for a specific position."   Ennis Declaration (doc. no. 18-2), ¶ 14.

Ennis promoted Wright to lieutenant in the Patrol Division.   Ennis explained that Wright is a veteran police officer who has worked in the Troy Police Department since 1990.   Wright had been a police officer about seven years longer than Youngblood, and,

unlike Youngblood, had been continuously employed with the Troy Police Department.   Ennis noted that Wright had been a successful narcotics officer and supervisor in the Patrol Division, and had served as an investigator in the Detective Division.   Wright also was a member of "the ERT Team and [was] an Active Shooter Instructor."   Id., ¶ 12.   Ennis judged Wright to be the most qualified candidate amongst those eligible for promotion to lieutenant in the Patrol Division.   Wright's greater overall years of experience with the department, supervisory experience in the relevant division, experience in a number of divisions, clearly constitute a "legitimate, nondiscriminatory reason" for promoting Wright instead of Youngblood. See Bradford v. Rent-A-Center East, Inc., 346 F. Supp. 2d 1203, 1211 (M.D. Ala. 2004) (Thompson, J.).

The city has also provided a legitimate, non-discriminatory reason for Ennis's promotion of Jerkins over Youngblood.   The lieutenant position ¶Jerkins won was in the Public Housing Division.

11

Jerkins began his law enforcement career a year before Youngblood began his, and, unlike Youngblood, had spent his entire career working for the Troy Police Department. Also in contrast with Youngblood, Jerkins had experience not only in the Patrol Division, but also in the Public Housing Division, which Ennis deemed highly relevant to the promotion decision. Jerkins also had served in a leadership role in both the Patrol and Public Housing Divisions at the same time. Ennis stated that Jerkins's diversified experience was critical to the promotion decision. "Youngblood's work experience was much more limited and short-lived, comparatively." Ennis Declaration (doc. no. 18-2), ¶ 13.

As the city has put forth legitimate, nondiscriminatory explanations for the promotion decisions, the burden returns to Youngblood to put forward sufficient evidence to allow a reasonable fact finder to conclude that each and every one of the city's proffered reasons was not actually the

motivation for the promotions. Youngblood may do so "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." Standard, 161 F.3d at 1332.

In an effort to show pretext, Youngblood makes several arguments: that he was better qualified than either candidate; that the promotion a year earlier of a less-experienced white officer demonstrates that the city's proffered reasons for the promotions are false; and that the timing of the promotions, soon after a black lieutenant filed an EEOC charge of race discrimination, establishes pretext. The court will address each argument in turn.

Youngblood contends that he was better qualified than the selected candidates for both positions. "A plaintiff seeking to use comparative qualifications to rebut a defendant's proffered nondiscriminatory reasons for promoting another employee 'must show that the

disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" <u>Gray v. City of Montgomery</u>, 756 F. Supp. 2d 1339, 1347 (M.D. Ala. 2010) (Thompson, J.) (quoting <u>Brooks v. County Com'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006). Youngblood has not shown any disparities between his qualifications and those of Wright and Jerkins that would meet that lofty standard.[8]  Indeed, the promoted officers had more experience as police officers overall and in the department.  Youngblood feels that he was the better candidate because he has more diverse experience in the National Guard and working in larger

---

8.  To the extent Youngblood relies on his score on the evaluation as a disparity, it is worth noting that Youngblood outscored the other applicants by less than 10 points on a 100-point scale; all of the applicants scored in the 80s.  Therefore, there is nothing in the record to support the conclusion that the score differential, in and of itself, is of such weight and significance that no reasonable person would choose one of the other applicants over him.

police departments outside of Troy than the promoted
individuals did.  Although Youngblood may well believe
that he was more qualified than either Wright or
Jerkins based on that experience, "'a plaintiff
employee may not establish that an employer's proffered
reason is pretextual merely by questioning the wisdom
of the employer's reason' as long as 'the reason is one
that might motivate a reasonable employer.'"
Pennington v. City of Huntsville, 261 F.3d 1262, 1267
(11th Cir. 2001) (quoting Combs v. Plantation Patterns,
106 F.3d 1519, 1543 (11th Cir. 1997)); see also
Bradford, 346 F. Supp. 2d at 1211.  A reasonable
employer might, as did Chief Ennis, prefer to promote
otherwise qualified individuals based upon a record of
successful experience within his own organization
rather than on experience in prior employment; the
employer would have more difficulty gauging a
candidate's success and experience with another
employer than in his own workplace.

Youngblood also argues that Ennis's proffered reasons for promoting Wright and Jerkins are not to be believed because, in the previous year, Ennis had promoted Bryan Weed, a white officer, to the rank of lieutenant, despite the fact that he had less experience than Youngblood did.   Youngblood contends that Weed had eight years of experience in law enforcement overall, and six years of experience in the Troy Police Department, less than Youngblood's seven years of experience in the department and 14 years of combined law-enforcement experience.[9]   Because Ennis once promoted an individual with less experience than him, Youngblood argues, Ennis must be lying now when he

---

9. The court calculates Youngblood's total experience slightly differently from the way it was done by him, who contends he had "approximately 15 years of combined law enforcement experience with seven of those years coming from employment with Defendant." Pl's Response (doc. no. 25), at 11.  Also, the Weed promotion came the year prior to the 2012 promotions Youngblood now challenges; accordingly, Youngblood at the time of the Weed promotion would have had only about six years of experience in the department and 13 years of police experience combined.  In any case, the exact amount of experience he had makes no difference to the outcome.

now explains that he promoted Wright and Jerkins based on their experience.

Arguably, if Youngblood could show with admissible evidence regarding the Weed promotion that Ennis's current explanation of how and why he makes promotions is untrue, that evidence could help to establish pretext. See Standard, 161 F.3d at 1332. However, all Youngblood has presented is argument. He has failed to present any admissible evidence regarding the Weed promotion decision, such as what division the position was in, what kind of experience Weed had, what kind of evaluations he had received, or Ennis's explanation for the promotion. Indeed, at the pretrial conference, the parties stated that they had not conducted any discovery as to the promotion of Weed. Simply put, the court knows nothing about how or why Weed was selected for promotion and accordingly cannot draw any conclusions from it.

Moreover, Ennis's decision to promote an individual with less experience does not contradict his earlier

explanation.  As Ennis explained it, experience is only one of several factors that he considers when making promotion decisions: ultimately he makes decisions "based on totality of the circumstances based on the personality and fit for a specific position."[10]  Ennis Declaration (doc. no. 18-2), ¶ 14.  In addition, Ennis explained that he does not value a candidate's experience outside the department as much as experience in the department, because he cannot assess the value of a candidate's outside experience as well.  Viewed in this lens, Youngblood did not have significantly more experience than Weed supposedly did.  Thus, the Weed promotion does not contradict Ennis's explanation of the approach he takes to promotions and falls far short of establishing that Ennis's explanations for the promotions of Wright and Jerkins are pretextual.

_____

    10.  While "personality" is a subjective criterion, that does not alone render it suspect.  <u>See Chapman v. AI Transp.</u>, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc) ("subjective reasons are not the red-headed stepchildren of proffered nondiscriminatory explanations for employment decisions").

Finally, Youngblood relies on the timing of the challenged promotions--the first of which he contends came shortly after a black lieutenant filed an EEOC race-discrimination charge--to establish pretext. Youngblood argues that Ennis was or could have been motivated by pressure to promote a black person after he got word of an EEOC complaint filed by another officer within the department. While the parties dispute whether Ennis knew of this EEOC charge before he made the decision to promote Wright, the court assumes for the purposes of argument that Ennis was aware of it before making both contested promotion decisions.

As a general matter, timing, of course, can be probative of discriminatory intent, but it does not always establish a triable issue of material fact. See Wu v. Se.-Atl. Beverage Corp., 321 F. Supp. 2d 1317, 1337 (N.D. Ga. 2004) (Pannell, J.) (citing retaliation cases where temporal proximity was sufficient to establish a triable issue of fact on causation and

cases where temporal proximity, though close, did not establish a triable issue).  Here, the timing of the promotions is not alone sufficient to establish a triable issue of fact as to pretext, as the evidence that the promotions were appropriate is overwhelming. The employer promoted two highly qualified individuals with more relevant experience than Youngblood had, and the record contains no other evidence that the decision was motivated by race.  Indeed, Chief Ennis four times chose both white and black candidates for promotion over Youngblood.  Under these circumstances, no reasonable jury could conclude that Ennis promoted Wright and Jerkins over Youngblood due to race, and there is no dispute of material fact.  <u>Beal v. Paramount Pictures Corp.</u>, 20 F.3d 454, 459 (11th Cir. 1994).

At his deposition, Youngblood admirably conceded that, <u>if</u> one accepted at face value the qualities Ennis said he preferred in the candidates for lieutenant, the decisions to promote Wright and Jerkins were

reasonable.  <u>See</u> Youngblood Deposition (doc. no. 18-1), 77:6-78:9.  Youngblood has failed to present sufficient evidence upon which a reasonable jury could conclude that Ennis's explanations for his promotion decisions were untrue or that they were motivated by race.  In the absence of such evidence, and in the face of Ennis's admittedly reasonable justification for promoting others over him, Youngblood's discrimination claims cannot succeed.  Where, as here, "the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer."  <u>Grigsby v. Reynolds Metals, Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987).  Accordingly, the court will enter summary judgment in favor of the City of Troy.

An appropriate judgment will be entered.

DONE, this the 3rd day of August, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE